Good morning. You may have pleased the Court. Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Appellant Marvin Butler. This morning, I'm going to use my time primarily to address the issue of restitution, and if time permits or the Court has questions, I'll address the other two issues. Here, the District Court ordered restitution in the amount of over $2 million. Now, under the Victim, Witness, and Protection Act that the Court was operating under since this was a pre-1995 crime, there are certain requirements. First, the Court must consider the defendant's ability to pay before it orders restitution. Second, the record must indicate that the Court considered the defendant's future ability to pay if it shows that there is no present ability. And third, there must be some evidence on the record that the defendant may be able to pay the amount ordered in the future. In this case, none of those requirements were met. First, there was no evidence that Mr. Butler had any ---- The standard of review on this issue, was this raised before the sentencing court? It was. There was an objection before the sentencing court. What was said? It said that he objected to the order of restitution for the record. That's it? That's it. And it didn't say there's no ability to pay or no showing of ability to pay? Did it just say, I object to the order of restitution? That's correct, Your Honor. Okay. So under the government's argument, there isn't reviews for plain error. We contend it's abuse of discretion. But in any case, it doesn't really matter because under either standard, that error is reversible. He was able-bodied and had a good background in education and all this, right? He was able-bodied. He had some education. And he made a lot of money in the past, right? Nowhere near $2 million, Your Honor. But anyway, he was capable of making a lot of money, right? There was some indication that he had made some money in the past. There was no indication that he had made any money near this amount and no indication that he had made any substantial amounts of money legally in the past. The record was just bereft on that issue. Let's suppose hypothetically, not necessarily this case, that a sentencing judge has before her someone who's engaged in a very sophisticated, very difficult, very complex, and very profitable white-collar crime. Could a sentencing judge in that circumstance base a restitution award on the theory that if these same sophisticated efforts have been made in the legitimate business world, that this individual could make tons of money? In other words, base the future ability to pay on the individual's sophistication applied in the scheme of conviction. I'd say that, yeah, that would probably be permissible, depending on the course of specific facts, that the sophistication of the scheme as demonstrating the man's ability to earn money in a legitimate manner, and then, of course, balanced against the amount of restitution. But there's, as you say, there's absolutely no evidence of that in this case. The Court, in fact, by its order of nominal payments, sort of made an, actually did make an implicit finding that there would be no future ability to pay. Had she really believed that he could pay this amount, she would have ordered – she would not have ordered a schedule of $100 a month. She would have ordered something substantially more than that. So that indicates that the extent that the Court considered this issue, the Court found just the opposite, that he didn't have any future ability to pay this large amount of restitution. Roberts. Did you want to speak at all to the post-sentence rehabilitation matter? I mean, it's up to you. It's your time. I'll speak to that, Your Honor. Obviously, following the briefing on my – following my brief in this case, Mohammed changes the legal landscape on this in that it seems to suggest that on review, this Court will look – will apply unitary standard review, look at the reasonableness of the sentence and not necessarily judge departure separately. Now, given the flux in this circuit's sentencing jurisprudence now following Booker, that's certainly an open question. And the reason is because if the guidelines do not include departures, that, as Mohammed seems to suggest, that has great implications for your review. On one hand, and seems to be the de facto practice in many of the district courts, they start with the guideline as sort of a presumptive sentence, and they use Booker factors to decide whether or not one should vary from that sentence. Now, that makes a lot more sense under the Booker rationale if those guideline sentences in fact include departures because now we've included a much larger universe of factors that are encompassed by 3553A. And that's certainly the argument that the guidelines, for the most part, encompass all of 3553A factors, but they do that through the mechanism of departures. If we separate departures from the guidelines, then there's no longer that relationship and that makes no longer makes any sense. And that's what happened in this case. The Court indicated that it was willing to consider that as a factor in mitigation if she would give him credit for that if it was permissible under the guidelines. She decided that, no, it wasn't permissible under the guidelines, so he wasn't getting any credit for that. Therefore, his sentence was not reduced. Had the judge thought that this was a permissible departure, and it was a permissible departure under the law, the government concedes that, then it's likely that his sentence would have been different. She would have given him credit for his post-defense rehabilitation as required under the law of that time, and his sentence would have been less. His guideline sentence would have been less. And for that reason, it was there. And that's why it doesn't make any sense to consider guidelines apart from departures as Mohammed might broadly be read to sweep so broadly. Do you want to save some time for rebuttal? Yes, I'll save the remaining of my time for rebuttal. Thank you for coming in today. I appreciate it. We'll hear from the Governor at this time. Mr. Kinn.  May it please the Court. My name is Curtis Kinn. And I do represent the plaintiff appellee, United States of America, in this matter. Turning first then to restitution, which is what we began with here, as defense counsel was saying, the question is, was there some evidence in the record of the defendant's ability to pay? Because as this Court has made very clear in its jurisprudence, there is no requirement that the district court make an express finding. And I think the record here certainly reflects that the district court knew of its ability to have to consider the ability to pay. And the district court also had a record before it that suggested that this defendant would have the ability to pay. He was healthy. He had a degree in business management. The sophistication of the fraud that he carried out certainly suggests an ability to make money. There was evidence before the district court that he had, in fact, been the CEO of two other organizations, the Kids Net Connect and Office Video Online. He was even named Business Innovator of the Year in 2001. This is all sufficient for the district court to have found that this defendant had the ability to pay. Did the district court know how much money this defendant made legitimately any time recently? No, Your Honor. But what the district court did know is that in the crime that was charged and found guilty for, he raised about $2.3 million between the period 1994 and 1995, of which he pocketed $556,000. The district court also did know that he made, I believe it was his own, a defense counsel's own statement that he made substantial monies, I think, with respect to Kids Net Connect and OVO, Office Video Online, but no specific amounts, Your Honor. But I think that is a sufficient record for the court to have found below that this defendant had the ability to pay. Moreover, this defendant, $2 million, while a seemingly large sum of money, compared to this defendant's ability to make the money, it was reasonable under the circumstances. It was also, this defendant was jointly and severally liable for that amount with his co-defendant. So on the restitution issue, we would simply say that there was no error here. Certainly under the plain error standard, when this defendant has had every opportunity to previously challenge the restitution order, he didn't do so. He's done it very late in the game here, and it seems that the fairness and the integrity of these judicial proceedings are not compromised. You want to talk about post-defense rehabilitation? I will, Your Honor. It seems, frankly, here that there's no dispute that, at least under Mohammed, which is the law of the circuit, that it would just be a unitary review of reasonableness. It also seems that there's no dispute here that the 87-month sentence here was reasonable. There doesn't seem to be any dispute there.  You agree that under United States v. Green that a district judge has the discretion to consider post-defense rehabilitation? Yes. We've conceded to that in our briefs, and under the 1995 sentencing guidelines, which were applied here, the district court had that discretion. However, what the district court decided not to do was to give the defendant ultimately any credit. The district court was entirely clear at the beginning of the sentencing hearing when the district court said, I am not bound by the guidelines. And at the close of the sentencing hearing when the district court said, I am aware that the court could have sentenced outside of the guidelines. I'm looking at what the district judge, what she said at sentencing, and she says, I purposefully have indicated that I didn't adjust the sentence for a post-defense rehabilitation. A little further along, she says, I haven't done that here. So that may be an issue for the Ninth Circuit to review. But certainly, if that's what post-defense rehabilitation means, even under the guideline structure, this Court would find the defendant should be given credit for that under the guideline structure and would be a basis for departure. It is a little odd, Your Honor, that the district court made those statements. But in that same hearing, the district court was very clear that I know I can sentence outside of the guidelines and I have discretion to impose a reasonable sentence. But she made very clear that her state of mind is she cannot consider post-defense rehabilitation, right? And she goes further to say that if I could, the sentence would be different. Not might, but would. I think, though, when read as a whole in the district court's comments, it has to do with her consideration as a matter of departure. I think the court needs to look at the comments by the district court taken as a whole. It is certainly, as the Court points out, possible to read those statements somewhat inconsistently. But, you know, borrowing from ordinary, you know, canons of statutory construction when there are ambiguous provisions that have to be read. This is not statutory construction, counsel. This is what a district judge said at sentencing. If she had said, I know I have that discretion and I choose not to exercise it, it would be a completely different story. But she says, I don't think I have that discretion, but if I did, the sentence would be different. And we ignore that? I think it's not that you can ignore it, but I think when also coupled with the fact that the district court says, I understand that outside of the guidelines I have the discretion to impose a sentence that's reasonable, and she ultimately then decides that she is not going to, then the court just needs to look at whether that 87-month sentence was reasonable. And it was reasonable under the circumstance. There seems to be no dispute as to that fact here. And, moreover, it may simply well be that the district court, because in 2000 the Sentencing Commission changed it such that post-sentence rehabilitation can't be considered at all, the district court may have found, and it's a reasonable determination of what a good sentence was or that 87 months was reasonable, is that ultimately, even under Booker, she's not going to exercise that discretion because for the last five years she had not been taking into account. This is a 1995 sentencing guideline case, isn't it? It is true, Your Honor. Absolutely. But I think it is. Probably one of the last few remaining out there. One would hope. But you would think. But it would seem reasonable for this court and certainly for the district court to have taken into account that the Sentencing Commission said in 2000 that it is an unfair, undue windfall to reward those defendants that for whatever reason get a resentencing, that they should also then be able to get the benefit of any post-sentence rehabilitation. And that also could have clearly been in the district court's mind when it imposed the reasonable 87-month sentence that it did. So I understand the court's concerns with what the district court did say about the ability to give a departure. But ultimately, standing back under Mohammed, looking at the ultimate reasonableness of the 87-month sentence, it is clear that the district court understood what it could and could not do, and she chose to nonetheless impose the 87-month sentence. Which, by the way, had this gone the way of an ordinary Ameline limited remand, the district court made the finding that I would not have sentenced differently. I would have not materially differed my sentence. In fact, I would not have differed it at all. That is the remand that the defense ---- This was post-Booker, pre-Ameline. Yes. Right here. Yes. Quite a bit of fortuity here for the defendant, I believe. It was remanded in May and Ameline came down in June. The government at that time, by the time Ameline came down, did not have the opportunity to petition for rehearing because it was too late. So we went forward with the full resentencing. Okay. I think we have your argument. Very well. Thank you, Your Honor. Thanks for coming in today. Mr. Bublin. It's important to bear in mind that this was a 1995 guideline case, and one of the few left. When the court sentenced this case in 2005, I think it's a fair inference that with respect to the restitution, the court was operating under post-1995 strictures. That is, she operated as if the full restitution was mandatory and then the determination with respectability to pay bore on the payment schedule. And her order reflects that. At the very least, this Court should remand the case to let the Court determine whether or not she made that determination. But it's relatively clear from the record that she did not, especially given the probation officer's very strong statement that he did not have any ability to pay, and all the evidence in the pre-sentence report indicated that. Did you bring to the attention of the Court that she was using the Rome criteria from the Rome statute? No, Your Honor. I didn't try this case below in the office. But your office did. Your office did not. But on the other hand, all that information was in the probation report, and the Court had an independent statutory duty to consider that. That's part of the restitution statute, requires her to consider his ability to pay. The information was there. Then there was no evidence to the contrary. Now, with respect to plain error, this Court's precedent on that issue is absolutely clear. I direct the Court to the Montgomery case cited in my reply brief at page 12, 384F, third, 1050, is exactly on point and finds plain error under the exact same circumstances. And finally, with respect to the departure, it is absolutely clear that the Court, had she been permitted to, would have given him credit for that. And for that reason, it was error under the law not to do that. Okay. Thank you both for your argument. The case just argued will be submitted for decision. We'll proceed to the last case on the argument calendar this morning, which is Herring v. Teradyne. Counsel will come forward, please. Thank you.
judges: T.G. Nelson, Siler, Hawkins